1   CHAPIN FITZGERALD SULLIVAN LLP
2       Edward D. Chapin, Esq. (SBN: 053287)
        echapin@cfsblaw.com
3       Francis A. Bottini, Jr., Esq. (SBN: 175783)
        fbottini@cfsblaw.com
4       Douglas J. Brown, Esq. (SBN: 248673)
5       dbrown@cfsblaw.com
6   550 West "C" Street, Suite 2000
7   San Diego, California 92101
    Tel:  (619) 241-4810
8   Fax:  (619) 955-5318
9   Attorneys for Plaintiffs Kevin Ferguson and Sandra Muñiz
10

11            UNITED STATES DISTRICT COURT

            CENTRAL DISTRICT OF CALIFORNIA
12

13  **Kevin Ferguson**, *on behalf of himself*    )    Case No.:   11-cv-0127 DOC (AJWx)
14  *and all others similarly situated*,          )
                                                   )    **Consolidated Plaintiffs'**
15                              Plaintiff,         )    **Opposition to Defendants'**
                                                   )    **Motions to Compel Individual**
16          vs.                                    )    **Arbitrations And To Dismiss or**
                                                   )    **Stay Proceedings Pending**
17  Corinthian Colleges, Inc.; Corinthian         )    **Arbitrations**
    Colleges, Inc., d/b/a Everest College;        )
18  Corinthian Colleges, Inc., d/b/a Everest      )
    University; Corinthian Colleges, Inc.,        )
19  d/b/a Everest Institute; Corinthian           )    Date:    June 27, 2011
    Colleges, Inc., d/b/a Everest College of      )    Time:    8:30 a.m.
20  Business, Technology and Health Care;         )    Dept.:   9-D
    Heald College, LLC; and Heald Capital,        )    Judge:   Hon. David O. Carter
21  LLC,                                          )
22                                                 )
                            Defendants.            )
23                                                 )
                                                   )
24                                                 )
                                                   )
25  _____              )
    [Additional Caption on Next Page]
26

27

28

| | |
|---|---|
| 1 | Case No.:   11-cv-0259 DOC (AJWx) |
| | **Sandra L. Muñiz**, *on behalf of herself* |
| 2 | *and all others similarly situated*, |
| 3 | |
| | Plaintiff, |
| 4 | vs. |
| 5 | |
| | Corinthian Colleges, Inc.; Corinthian |
| 6 | Colleges, Inc., d/b/a Everest College; |
| | Corinthian Colleges, Inc., d/b/a Everest |
| 7 | University; Corinthian Colleges, Inc., |
| 8 | d/b/a Everest Institute; Corinthian |
| | Colleges, Inc., d/b/a Everest College of |
| 9 | Business, Technology and Health Care; |
| 10 | Heald College, LLC; and Heald Capital, |
| | LLC, |
| 11 | |
| 12 | Defendants. |

Opposition to Motions to Compel Individual Arbitrations (*Ferguson, et al. v. Corinthian*)

# Table of Contents

I.    Introduction ................................................................................. 1

II.   Statement of Facts ....................................................................... 2

    A.    The Allegations ................................................................... 2

    B.    Procedural History .............................................................. 5

III.  Discussion ..................................................................................... 6

    A.    Corinthian's Arbitration Agreements Do Not Cover
    This Dispute ........................................................................ 6

        1.    The Court May Only Order Arbitration As To
        Disputes The Parties Have Agreed to Arbitrate. ................... 7

        2.    Plaintiffs' Claims Do Not Arise From Their
        Enrollments. ......................................................................... 8

    B.    Arbitration Would Bar Vindication of Plaintiffs'
    Statutory Rights. ............................................................... 12

        1.    Vindication of Statutory Rights Analysis Applies
        To This Case. ....................................................................... 12

        2.    Plaintiffs' Injunctive Relief Claims Are Not
        Arbitrable. ........................................................................... 14

III.  Conclusion .................................................................................. 17

# Table of Authorities

Page(s)

## Cases

*AT&T Mobility LLC v. Concepción,*
  563 U.S. ___, 131 S. Ct. 1740 (Apr. 27, 2011) ................... 1, 6, 13, 14, 15

*AT&T Techs., Inc. v. Communications Workers of Am.,*
  475 U.S. 643 (1986) ....................................................... 6, 7 , 16

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,*
  363 U.S. 574 (1960) ................................................................. 6

*Howsam v. Dean Witter Reynolds, Inc.,*
  537 U.S. 79 (2002) ................................................................. 7

*In re Tyco Int'l, Ltd.,*
  2003 D.N.H. 228 (D. N.H. 2003) ............................................. 7

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
  130 S. Ct. 2847 (2010) ......................................................... 7, 8

*First Options of Chicago, Inc. v. Kaplan,*
  514 U.S. 938 (1995) ............................................................... 7

*Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.,*
  501 U.S. 190 (1991) ............................................................... 7

*Nagrampa v. MailCoups, Inc.,*
  469 F.3d 1257 (9th Cir. 2006) ................................................. 7

*Freeman v. State Farm Mut. Auto. Ins. Co.,*
  14 Cal. 3d 473 (1975) ............................................................ 8

*Lawrence v. Walzer & Gabrielson,*
  207 Cal. App. 3d 1501(1989) ................................................. 8

*Victoria v. Superior Court,*
  40 Cal. 3d 734 (1985) ............................................................ 8

*Bono v. David,*
  147 Cal. App. 4th 1055 (2007) ..................................... 8, 10, 11

*Fleet Tire Serv. v. Oliver Rubber Co.,*
  118 F.3d 619 (8th Cir. 1997) ................................................. 8

*Prudential Lines, Inc. v. Exxon Corp.,*
  704 F.2d 59 (2d Cir. 1983)..................................................... 8

*McAllister Bros., Inc. v. A & S Transp. Co.,*
  621 F.2d 519 (2d Cir. 1980) ................................................... 8

*Collins & Aikman Prods. Co. v. Building Sys.,*
  58 F.3d 16 (2d Cir. 1995) ....................................................... 9

*Tracer Research Corp. v. Nat'l Envtl. Servs. Co.,*
  42 F.3d 1292 (9th Cir. 1994) ....................................... 9, 10, 11

*Mediterranean Enters., Inc. v. Ssangyong Corp.,*
    708 F.2d 1458 (9th Cir. 1983) ........................................................ 9, 10, 11

*Cf. Simula, Inc. v. Autoliv, Inc.,*
    175 F.3d 716 (9th Cir. 1999) ................................................................. 9

*Cobler v. Stanley, Barber, et al.,*
    217 Cal. App. 3d 518 (1990) ................................................................. 10

*Hall v. Superior Court,*
    18 Cal. App. 4th 427 (1993) ................................................................. 10

*McDonald v. Johnson & Johnson,*
    776 F.2d 767 (8th Cir. 1985) ................................................................. 10

*Glesenkamp v. Nationwide Mut. Ins. Co.,*
    344 F. Supp. 517 (N.D. Cal. 1972) ...................................................... 10

*Armada Coal Export, Inc. v. Interbulk, Ltd.,*
    726 F.2d 1566 (11th Cir. 1984) ............................................................ 11

*City of Oceanside v. AELD, LLC,*
    740 F. Supp. 2d 1183 (S.D. Cal. 2010) ................................................ 11

*Cardonet, Inc. v. IBM,*
    2007 U.S. Dist. LEXIS 83654 (N.D. Cal. Nov. 5, 2007) ..................... 11

*Michele Amoruso E Figli v. Fisheries Dev. Corp.,*
    499 F. Supp. 1074 (S.D.N.Y. 1980) ..................................................... 11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
    388 U.S. 395 (1967) ............................................................................. 11

*Arriaga v. Cross Country Bank,*
    163 F. Supp. 2d 1189 ........................................................................... 11

*Victoria v. Superior Court,*
    40 Cal. 3d 734 (1985) .......................................................................... 12

*Circuit City Stores v. Adams,*
    532 U.S. 105 (2001) ............................................................................. 12

*Gilmer v. Interstate/Johnson Lane Corp.,*
    500 U.S. 20 (1991) ............................................................................... 12

*Herrera v. Katz Communications, Inc.,*
    532 F. Supp. 2d 644 (S.D.N.Y. 2008) .................................................. 12

*Sutherland v. Ernst & Young LLP,*
    2011 U.S. Dist. LEXIS 26889 (S.D.N.Y. Mar. 3, 2011) .................. 12, 13

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,*
    473 U.S. 614 (1985) ............................................................................. 13

*Nat'l Supermarkets Assoc. v. Am. Express Travel Related Servs. Co.,*
    634 F.3d 187 (2d Cir. 2011) ................................................................. 13

*Ragone v. Atl. Video,*
    595 F.3d 115 (2d Cir. 2010) ................................................................. 13

*Kristian v. Comcast Corp.,*
    446 F.3d 25 (1st Cir. 2006) ................................................................. 13, 14

*Hadnot v. Bay, Ltd.,*
    344 F.3d 474 (5th Cir. 2003) ............................................................... 13, 14

*Paladino v. Avnet Computer Techs., Inc.,*
    134 F.3d 1054 (11th Cir. 1998) ................................................................. 13

*Stolt-Nielsen,*
    559 U.S. __, 130 S. Ct. 1758 (Apr. 27, 2010)........................................... 13

*Chen-Oster v. Goldman, Sachs & Co.,*
    2011 U.S. Dist. LEXIS 46994 (S.D.N.Y. April 28, 2011) ...................... 13

*Mastrobuono v. Shearson Lehman Hutton,*
    514 U.S. 52(1995) ...................................................................................... 14

*Broughton v. Cigna Healthplans of California,*
    988 P.2d 67 (1999) ............................................................................... 14, 15

*Cruz v. Pacifware Health Systems, Inc.,*
    66 P.3d 1157 (2003) ............................................................. 14, 15, 16, 17

*Italian Colors Rest. v. Am. Express Travel Relates Servs. Co.,*
    554 F.3d 300 (2d Cir. 2009)..................................................................... 14

*Gray v. Conseco, Inc., Case No. 00-00322 DOC (EEX),*
    2000 U.S. Dist. LEXIS 14821 (C.D. Cal. Sep't 29, 2000) ...................... 15

*Davis v. O'Melveny & Myers,*
    485 F.3d 1066 (9th Cir. 2007) ................................................................. 15

*Bayless Inv. & Trading Co. v. Chevron U.S.A., Inc., No. 93 C 0704,*
    1994 U.S. Dist. LEXIS 12190 (D. Ariz. May 25, 1994) ......................... 16

*Cardenas v. AmeriCredit Fin. Servs. Inc., No. C 09-4978 SBA, 2010*
    U.S. Dist. LEXIS 101669 (N.D. Cal. Sep't 13, 2010)............................. 16

*Daro v. Superior Court,*
    151 Cal. App. 4th 1079 (2007) ................................................................ 16

*Sierra Club v. Chevron U.S.A., Inc.,*
    834 F.2d 1517 (9th Cir. 1987) ................................................................. 16

*Britton v. Co-op Banking Group,*
    916 F.2d 1405 (9th Cir. 1990) ................................................................. 17

*E.E.O.C. v. Waffle House, Inc.,*
    534 U.S. 279 (2002) ................................................................................. 17

*In re First Alliance Mortg.,*
    280 B.R. 240 (C.D. Cal. 2002)................................................................. 17

# Legal Authorities

Title IV of the Higher Education Act of 1965 ("Title IV"), 20 U.S.C.
§ 1070, *et seq.* ............................................................................. 3

Cal. Civ. Code § 1648 ................................................................ 8

Knight et al., Cal. Practice Guide: Alternative Dispute Resolution
(The Rutter Group 2011) ........................................................ 9

American Arbitration Association, Drafting Dispute Resolution
Clauses: A Practice Guide (Sep't 1, 2007) ......................... 11

Cal. Civ. Code § 1654 ............................................................. 12

California's False Advertising Act ......................................... 14

Unfair Competition Law .......................................................... 14

Consumer Legal Remedies Act, *e.g.*, Cal. Bus. & Prof. Code § 17200,
*et seq.* ................................................................... 14, 16

# I. Introduction

Defendants (collectively, "Corinthian") seem intent on escaping this Court and desperate to avoid litigating the claims of similarly situated plaintiffs concurrently.  Corinthian's first order of business was an attempt to separate the *Ferguson* and *Muñiz* actions and send them to different judicial districts.  It then tried to thwart the consolidation of these virtually identical cases, which assert identical claims on behalf of identically-defined classes, on the grounds that consolidation would be "inefficient, inconvenient, and unfairly prejudicial."  The Court rejected those efforts, denying Corinthian's transfer motion and granting consolidation.[1]

In the meantime, the Supreme Court decided *AT&T Mobility LLC v. Concepción*, 563 U.S. ___, 131 S. Ct. 1740 (Apr. 27, 2011) – which abdicates a California rule holding certain arbitration provisions unconscionable and expands corporations' ability to force consumers into arbitration when disputes arise – and Corinthian sensed a new opportunity to send this dispute elsewhere.  While the majority's 5-4 opinion in *Concepción* has generated considerable controversy and been heralded as a game-changer in the consumer class action arena, it does not avail Corinthian in this case.  This is because, even accepting the Supreme Court's decision that Corinthian's effort to bar its students from collectively vindicating their rights is conscionable, the arbitration clauses that Corinthian drafted and entered into do not cover the instant dispute.

The controlling language in all of the agreements at issue states that arbitration applies to "any dispute arising from [my] enrollment at [Corinthian]."

---

[1] Corinthian has filed two separate motions to compel arbitration, one for *Ferguson* and one for *Muñiz*.  As Corinthian explains in its moving papers, it has strategic reasons for having done so.  Mot. at 8:18-23, n.3 (*Muñiz v. Corinthian*, Case No. 11-00259, Doc. No. 22) ("*Muñiz* Mot.").  Because the cases have been consolidated, and because the issues presented are the same, the plaintiffs submit this single opposition brief to both motions.

But these cases arise entirely from Corinthian's deceptive marketing scheme, whereby it misleads prospective students to induce them to enroll.  This scheme was devised, implemented, and executed well before the plaintiffs ever signed any agreement with the school.  It was precisely that scheme that led them to enroll. Once they did, Corinthian had achieved its end, and their fates were sealed.

The Court should decline Corinthian's invitation to re-write these arbitration agreements so as to broaden their scope and allow them to encompass claims that preceded and did not arise from the plaintiffs' enrollment.  And even if Corinthian's arbitration clauses did not suffer from this fatal flaw, this Court should not relegate this dispute to arbitration where the plaintiffs would be unable to fully vindicate their statutory rights as private attorneys general.  For these reasons, the Court should not compel arbitration.

## II.  Statement of Facts

### A.    The Allegations.

Through a scheme based on federal student financial aid, Corinthian is systematically violating California law in the name of profit and at the expense of its students, the federal government, and, consequently, the American taxpayers. Mimicking the subprime mortgage lenders that recently brought on the near-collapse of the American economy, Corinthian has based its business on (1) a source of easy credit; (2) a consumer population that it can exploit as its pawns; and (3) a means of tapping into that easy credit through those pawns without exposing itself to the inevitable downside credit risk it creates.  ¶ 3.[2]

Corinthian is a publicly-traded higher education company, headquartered in Santa Ana, that owns and operates for-profit academic institutions, including

---

[2]    Unless otherwise specified, all paragraph references in this brief are to Plaintiff Sandra Muñiz's operative complaint.  Although the paragraph numbers and precise wording are different, the allegations in Plaintiff Kevin Ferguson's complaint are substantially the same.

over 100 colleges across 25 states under the names Everest and Heald.  ¶ 13. Since its founding in 1995, Corinthian has boomed into one of the largest for-profit college entities in the United States, as reflected by the explosive growth of its total student enrollment from 69,200 on September 30, 2008 to 113,818 by September 30, 2010 – a net 64.5% increase over a two-year period.  ¶¶ 4, 13.  By 2009, Corinthian's revenues were $1.3 billion.  ¶ 4.  This astonishing growth is a direct result of the misleading marketing practices at issue in this lawsuit.

The driving force behind Corinthian's growth and the fuel for its profiteering is Title IV[3] federal financial aid, which accounted for 89% of Corinthian's revenue in 2009.  ¶ 5.  Corinthian systematically takes advantage of its students throughout the financial aid process – misrepresenting and omitting material facts, and inducing these students to take on loan obligations that they cannot fulfill and would not have accepted if Corinthian had not misled them.  ¶ 5.  Because federal law caps the percentage of revenue an educational institution can receive from Title IV funding at 90%, and because military tuition assistance programs such as the Post-9/11 GI Bill do not count towards this cap, Corinthian targets veterans and active military personnel to fill the remainder of its student body.  ¶ 6.

One independent analysis has estimated that Corinthian's 3-year student loan default rate may be as high as 39%.  ¶ 7.  This means that nearly 2 out of every 5 Corinthian students will default on their loans within three years.  On its face, this default rate signals that Corinthian is burdening its students with financial obligations that their educations are not equipping them to repay.  ¶ 7. Student loans are ordinarily not dischargeable even through bankruptcy, leaving

---

[3]  Title IV of the Higher Education Act of 1965 ("Title IV"), 20 U.S.C. § 1070, *et seq.*, covers the administration of United States federal student financial aid programs.

these Corinthian students who cannot repay their loans saddled with loans they can never escape.  Because student loans are federally guaranteed, Corinthian profits whether its students default on their loans or not.  ¶ 7.

United States Senator Richard Durbin of Illinois summarized the unfair and unlawful business practices of for-profit academic institutions like Corinthian during a Congressional floor speech on September 28, 2010:

> They are, by and large, a marketing operation: bring the students in, sign them up, bring in the Federal dollars; bring in more students, sign them up, bring in more Federal dollars. . . . [They] are sinking young people deeply into debt in student loans that they can never pay off, promising them courses, training, and degrees that will lead to a good job and, in fact, it leads to a dead end, where they end up with a worthless piece of paper.  They don't end up with the skills they need to get a job, but they do end up in debt, with student loans to the heavens.

¶ 8.  While Corinthian is free to market its services, it is not free to do so unlawfully.  Because Corinthian's marketing practices are misleading, and because they were among the scores that Corinthian has mislead, Plaintiffs Sandra Muñiz and Kevin Ferguson (collectively, "Plaintiffs") filed the instant class action lawsuits.  ¶¶ 9, 12.

There are five primary subjects on which Corinthian misleads prospective students:

- **Financial Aid**:  Corinthian deceives students throughout the financial aid process in order to maximize its financial aid revenues while still protecting its eligibility for Title IV funding, ¶¶ 35-49;

- **Cost**:  Corinthian misrepresents and conceals from prospective students the true cost of attending its schools, ¶¶ 50–57;

Opposition to Motion to Compel Individual Arbitration (*Ferguson, et al. v. Corinthian*)

- **Accreditations**:  In an effort to make its schools seem reputable and its degrees seem marketable, Corinthian misleads prospective students as to the accreditations of its Everest institutions, ¶¶ 58-69;

- **Quality**:  It also misrepresents the quality and reputation of its academic programs, its instructors' qualifications, and the marketability of the degrees it confers, ¶¶ 70-80; and

- **Career Placement Services**:  Corinthian misleads students regarding their post-graduation employment opportunities and its ability and willingness to assist graduates with career placement, ¶¶ 81-97.

As Plaintiffs allege, the Corinthian engages this deception through its website, its publications, and its enrollment advisors.  ¶¶ 31-33.  Collectively, these tactics drive Corinthian's enrollment practices and work to its great financial benefit – at the expense of its students, the federal government, and the American taxpayers.  ¶ 34.  Because Corinthian is not accountable for its graduates' performance on the job market, and because the government's guarantee on federal student loans immunizes Corinthian from the dangerous credit risks it encourages students to take on, the company's deceptive marketing practices have gone unchecked until now.  ¶ 34.

**B.    Procedural History.**

Plaintiff Kevin Ferguson sued Corinthian on January 24, 2011.  About two and a half weeks later, on February 11, 2011, Plaintiff Sandra Muñiz filed her suit against the school.  In each case, Corinthian brought a motion to change venue: on February 24, it moved to transfer *Ferguson* to the Southern District of Florida and on April 7, 2011 it moved to transfer *Muñiz* to the Eastern District of California.  In the meantime, Plaintiffs sought to have the cases consolidated via a motion filed in *Ferguson* on March 21, 2011.

Reasoning that this District represents the most convenient forum for the dispute, and that the interests of justice weighed against transfer, the Court

denied Corinthian's motion to transfer the *Ferguson* matter.  On the same day, the Court granted Plaintiffs' request to consolidate the two cases and to appoint Plaintiffs' attorneys as Co-Lead Counsel.  Ten days later, in lieu of filing a reply brief, Corinthian withdrew as moot its motion to transfer *Muñiz* in light of the Court's order granting consolidation.  On May 17, 2011, it filed the instant motions to compel arbitration.

## III.  Discussion

Plaintiffs should not be forced to arbitrate this dispute because: (1) it is outside the scope of Corinthian's arbitration agreements; and (2) arbitration would bar vindication of their statutory rights.

## A.     Corinthian's Arbitration Agreements Do Not Cover This Dispute.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Techs., Inc. v. Comm'ens Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

As Corinthian describes in its opening brief, all of the arbitration agreements at issue explain that they cover "any dispute arising from [my] enrollment at [Corinthian]."  Mot. at 7:28-8:2 (*Ferguson v. Corinthian*, Case No. 11-00127, Doc. No. 39) ("*Ferguson* Mot."); *Muñiz* Mot. at 6:21-23.  As Corinthian also points out in its brief, the Supreme Court recently emphasized "that parties may agree to limit the issues subject to arbitration."  *Concepcion*, 563 U.S. ___, (slip op., at 10); *Ferguson* Mot. 7:3-8; *Muñiz* Mot. 5:24-28.  That is precisely what Corinthian did here in limiting the scope of its form arbitration agreements to cover only those disputes "arising from" enrollment.

The gravamen of Plaintiffs' allegations is that "Corinthian uses fraudulent misrepresentations to entice prospective students to enroll."  ¶ 4.  To this effect, Plaintiffs assert seven claims, all of which center around Corinthian's deceptive marketing practices and the representations it makes to prospective students in

order to entice them to enroll.  Because they all concern the practices by which Corinthian induces students to enroll, none of these are claims that "arise from" enrollment.[4]

## 1. The Court May Only Order Arbitration As To Disputes The Parties Have Agreed To Arbitrate.

As a preliminary matter, whether an arbitration clause applies to a particular claim is for the Court, not an arbitrator, to decide.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).  "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that* dispute."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2856 (2010); *see also AT&T Techs.*, 475 U.S. at 651 (reasoning that the willingness of parties to enter into arbitration agreements "would be drastically reduced . . . [if an] arbitrator had the power to determine his own jurisdiction") (internal quotations omitted); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995); *Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.*, 501 U.S. 190, 208 (1991) ("Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to arbitrate the arbitrability question.") (internal quotations omitted); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1268 (9th Cir. 2006) (en banc).

In determining whether parties agreed to arbitrate a particular dispute, federal courts are to apply the ordinary state law principles governing contract formation.  *Granite Rock*, 130 S. Ct. at 2856.  Such a determination requires the

---

[4] Even if some subset of Plaintiffs' claims did pertain to wrongdoing beyond Corinthian's deceptive marketing practices and were arbitrable, the existence of such claims would not force Plaintiffs to arbitrate the others.  *In re Tyco Int'l, Ltd.*, 2003 D.N.H. 228 at *7 (D. N.H. 2003) ("I have found no support for the proposition that a party may be compelled to arbitrate otherwise nonarbitrable claims simply because they are intertwined with arbitrable claims.").

Court to examine and construe the specific arbitration agreements at issue. *Freeman v. State Farm Mut. Auto. Ins. Co.*, 14 Cal. 3d 473, 480 (1975).  It also requires the Court to examine whether the parties objectively intended to submit the dispute to arbitration.  Cal. Civ. Code § 1648 ("However broad may be the terms of a contract, it extends only to those things concerning which it appears the parties intended to contract."); *see also Lawrence v. Walzer & Gabrielson*, 207 Cal. App. 3d 1501, 1506 n.3 (1989) (applying section 1648 to analysis of scope of arbitration agreement).  While arbitration is favored under the Federal Arbitration Act, federal courts are cautioned not to use this principle to find a right to arbitrate where it does not exist.  *Victoria v. Superior Court*, 40 Cal. 3d 734, 744 (1985); *Bono v. David*, 147 Cal. App. 4th 1055, 1063 (2007).

## 2.    Plaintiffs' Claims Do Not Arise From Their Enrollments.

A threshold consideration for a court assessing the scope of an arbitration clause is whether the clause itself is broad or narrow.  *E.g.*, *Fleet Tire Serv. v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997); *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir. 1983).  Whether the clause is broad or narrow impacts the presumptions a court is to apply in determining its scope:

> If the arbitration clause is broad and arguably covers disputes concerning contract termination, arbitration should be compelled and the arbitrator should decide any claim that the arbitration agreement, because of substantive or temporal limitations, does not cover the underlying dispute . . . [W]hen dealing with a narrower arbitration clause, a court's inquiry is not so circumscribed, and it will be proper to consider whether the conduct in issue is on its face within the purview of the clause.  Hence, if the arbitration agreement cannot reasonably be construed to consider disputes over whether the contract was in force during the relevant period, arbitration need not be compelled.

*McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 522 (2d Cir. 1980) (internal citations and quotations omitted).

The "paradigm" of a broad arbitration clause is language effectively covering "any claim or controversy arising out of or *relating to* the agreement." *Collins & Aikman Prods. Co. v. Building Sys.*, 58 F.3d 16, 20 (2d Cir. 1995) (emphasis added).  By contrast, an arbitration clause that contains only the "arising out of" language and omits the usual words "related to" is a narrow one that compels arbitration of "only those disputes relating to the interpretation and performance of the contract itself."  *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (internal quotations omitted) (quoting *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)); *Cf. Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 n.3 (9th Cir. 1999) ("arising out of" and "arising hereunder" language is "considerably more narrow in scope" than "arising in connection with" language).

The controlling language in Corinthian's arbitration agreements explains that they cover "any dispute arising from [my] enrollment at [Corinthian]." *Ferguson* Mot. at 7:28-8:2; *Muñiz* Mot. at 6:21-23.  Because the agreements at issue are styled as and constitute enrollment agreements, it stands to reason that the parties' execution of those documents effectively marks the respective moments of Plaintiffs' enrollments.[5]  Such an arbitration clause that applies to any dispute "arising from" the subject agreement covers only *contractual* disputes, where a clause covering disputes "arising from or relating to" the agreement would also cover related tort claims.  Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2011) ¶ 5:223 (citing *Cobler*

---

[5] To the extent the enrollment agreements evidence an intent for "enrollment" to occur some time other than the execution of their enrollment agreements, such enrollment did not begin until even later.  *E.g.*, Decl. of Darrell Rhoten ¶ 4, Ex. A at 7 ("This agreement . . . becomes operative *when the student attends the first class session*.") (emphasis added).  Because Corinthian has not provided evidence demonstrating when Plaintiffs first attended class, it has likewise not shown when the enrollment agreements became operative.

1  *v. Stanley, Barber, et al.*, 217 Cal. App. 3d 518, 530 (1990); *Hall v. Superior Court*,

2  18 Cal. App. 4th 427, 435 (1993); *Bono*, 147 Cal. App. 4th at 1067).

3        Corinthian's deceptive marketing practices and misrepresentations to

4  prospective students, which form the basis of Plaintiffs' claims, are collateral to

5  and thus do not "arise from" enrollment.  In cases presenting similar language, the

6  Ninth Circuit has had "no difficult finding that 'arising hereunder' is intended to

7  cover . . . only those [disputes] relating to the interpretation and performance of

8  the contract itself." *Mediterranean Enters.*, 708 F.2d at 1464 (interpreting "arising

9  hereunder" as synonymous with "arising under"); *see also Tracer Research*, 42 F.3d

10  at 1295 (interpreting "arising out of" to have same scope as "arising under").  It

11  borders on stating the obvious to note that claims of wrongful inducement, like

12  Plaintiffs', do not implicate the interpretation or performance of the contract

13  whose execution was wrongfully induced.

14        This conclusion is even more inescapable in light of the fact that Plaintiffs'

15  claims in this matter arose *before* they ever enrolled.  Those claims allege that

16  Corinthian made a series of misrepresentations and promises, without ever

17  intending to honor them, in order to induce students to enroll.  That misconduct

18  could not have arisen from enrollments that could only have been consummated

19  once that inducement had been effected:

20               Plaintiffs' [fraudulent inducement] claim arose when [the

21               defendant] first made the promises, without intending to

22               honor them, that alleged induced plaintiffs to enter into the
             [contract] . . . .   Although both the fraud and the contract

23               claims look to [the defendant's] intent, each claim focuses on

24               [the defendant's] intent at separate and distinct times.

25  *McDonald v. Johnson & Johnson*, 776 F.2d 767, 770-71 (8th Cir. 1985).

26  Corinthian's failure to fulfill its misrepresentations and promises serves only as

27  evidence of its earlier wrongdoing, not as an operative element of that

28  wrongdoing itself.  *Glesenkamp v. Nationwide Mut. Ins. Co.*, 344 F. Supp. 517,

519 (N.D. Cal. 1972); *see also Tracer Research*, 42 F.3d at 1295 ("The fact that the tort claim would not have arisen 'but for' the [contract] is not determinative."); *Armada Coal Export, Inc. v. Interbulk, Ltd.*, 726 F.2d 1566, 1568 (11th Cir. 1984); *City of Oceanside v. AELD, LLC*, 740 F. Supp. 2d 1183, 1191 (S.D. Cal. 2010) (fraudulent inducement claim does not arise from or require existence of contract itself); *Cardonet, Inc. v. IBM*, 2007 U.S. Dist. LEXIS 83654 at **13-14 (N.D. Cal. Nov. 5, 2007) ("claims for fraud and misrepresentation arise from a duty independent of the obligations imposed by the contract").

This result should hardly surprise Corinthian.  Legal authorities have long recognized that narrow arbitration clauses, such as those at issue, are "dangerous," "presumably meaning dangerous to the party wanting to arbitrate disputes under it."  *E.g.*, *Bono*, 147 Cal. App. 4th at 1067.  The AAA, who Corinthian has designated as its arbiter of choice in all of the subject arbitration agreements, recommends as "the best to include in a contract" a clause that includes the "arising out of or relating to" language.  American Arbitration Association, Drafting Dispute Resolution Clauses: A Practice Guide at 7-8 (Sep't 1, 2007), *available at* http://www.adr.org/si.asp?id=6276.  Examples of cases distinguishing narrow "arising from" arbitration clauses from broad "arising from or related to" ones are legion.  *See, e.g., Tracer Research*, 42 F.3d at 1295; *Mediterranean Enters.*, 708 F.2d at 1464 (holding that omission of "related to" language is significant in Ninth Circuit); *Michele Amoruso E Figli v. Fisheries Dev. Corp.*, 499 F. Supp. 1074, 1080 (S.D.N.Y. 1980); *cf. Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967); *Arriaga v. Cross Country Bank*, 163 F. Supp. 2d 1189, 1192-93 (fraudulent inducement claims are covered by arbitration clause extending to claims "relating to" underlying agreement).

Corinthian had the opportunity to draft and enter into an arbitration agreement that would have covered not only claims arising under Plaintiffs' enrollments, but also those relating to it.  It plainly did not.  Even if there were

some ambiguity on this point, which there is not, that ambiguity would not save Corinthian's effort to compel arbitration because, as ordinary rules of contract interpretation require, ambiguity as to the scope of an arbitration agreement is construed against its author.  Cal. Civ. Code § 1654; *see also*, *e.g.*, *Victoria*, 40 Cal. 3d at 746 (resolving ambiguity in scope of arbitration clause against drafter). Even the Federal Arbitration Act's presumption of arbitrability is unavailing, as "[a]lthough the law favors contracts for arbitration of disputes between parties, there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate." *Victoria v. Superior Court*, 40 Cal. 3d 734, 744 (1985) (internal citations and quotations omitted).  In short, Corinthian is bound by the scope of the language it drafted and executed.  That language does not cover Plaintiffs' claims.

**B.     Arbitration Would Bar Vindication Of Plaintiffs' Statutory Rights.**

Even if Corinthian's arbitration agreements covered this dispute, which they do not, they would not be enforceable because arbitration would effectively prevent Plaintiffs from vindicating their statutory rights.

### 1.     Vindication of Statutory Rights Analysis Applies To This Case.

"[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Circuit City Stores v. Adams*, 532 U.S. 105, 123 (2001) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).  In other words, while it is "clear that statutory claims may be the subject of an arbitration agreement," a statutory claim is not appropriate for arbitration if the arbitral forum will not allow the plaintiff to fully vindicate that claim.  *Gilmer*, 500 U.S. at 26; *Herrera v. Katz Communications, Inc.*, 532 F. Supp. 2d 644, 646 (S.D.N.Y. 2008); *see also Sutherland v. Ernst & Young LLP*, 2011 U.S. Dist. LEXIS 26889 at *6 (S.D.N.Y. March 3, 2011) ("the arbitration of a statutory claim will be compelled only if that claim can be effectively vindicated in the

arbitral forum").

Where the terms of arbitration agreement operate "as a prospective waiver of a party's right to pursue statutory remedies," the Supreme Court has made clear that it "would have little hesitation in condemning the agreement as against public policy." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985). This pronouncement has led to the development of a body of law, referred to as "vindication of statutory rights analysis," by which a court is to declare an otherwise operative arbitration clause void, as a matter of public policy, when a plaintiff's statutory rights cannot be vindicated through arbitration. *E.g.*, *Nat'l Supermarkets Assoc. v. Am. Express Travel Related Servs. Co.*, 634 F.3d 187, 194-97 (2d Cir. 2011). As the Second Circuit has explained:

> a federal court will compel arbitration of a statutory claim only if it is clear that the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, such that the statute under which its claims are brought will continue to serve both its remedial and deterrent function.

*Ragone v. Atl. Video*, 595 F.3d 115, 125 (2d Cir. 2010) (internal quotes omitted) (quoting *Mitsubishi*, 473 U.S. at 637); *see also*, *e.g.*, *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n.14 (5th Cir. 2003); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) ("When an arbitration clause has provisions that defeat the remedial purpose of the statute, therefore, the arbitration clause is not enforceable.").[6]

---

[6] The Supreme Court's decisions in *Stolt-Nielsen*, 559 U.S. ___, 130 S. Ct. 1758 (Apr. 27, 2010), or *Concepción* do not interfere with or alter this vindication of statutory rights analysis. Federal courts have continued to apply this analysis following the *Stolt-Nielsen* decision. *E.g.*, *Nat'l Supermarkets*, 634 F.3d at 194-97 (March 8, 2011); *Chen-Oster v. Goldman, Sachs & Co.*, 2011 U.S. Dist. LEXIS 46994 at *26-33 (S.D.N.Y. April 28, 2011); *Sutherland*, 2011 U.S. Dist. LEXIS 26889 at *6 (March 3, 2011). The *Concepción* decision is likewise no impediment its application because that decision dealt with unconscionability, and specifically "whether the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of class arbitration procedures." *Concepción*, 131 S. Ct. at 1744. Vindication of statutory rights analysis is completely

## 2.    Plaintiffs' Injunctive Relief Claims Are Not Arbitrable.

Plaintiffs assert claims under several California consumer protection statutes: California's False Advertising Act ("FAL"), Unfair Competition Law ("UCL"), and Consumer Legal Remedies Act ("CLRA").  *E.g.*, Cal. Bus. & Prof. Code § 17200, *et seq.*   Although claims under the FAL, UCL, and CLRA are ordinarily arbitrable, because Plaintiffs here act as private attorney generals and seek injunctive relief on behalf of the public, their statutory rights in this instance cannot be vindicated in arbitration.  ¶¶ 140-41, 146-49, 154-55; *cf. Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63-64 (1995) (refusing to enforce choice-of-law provision in arbitration agreement that would prevent application of punitive damages in arbitration because "it seems unlikely that petitioners were actually aware . . . that by signing a standard-form agreement to arbitrate disputes they might be giving up an important substantive right"); *see also Kristian*, 446 F.3d at 47-48 (severing provision of arbitration agreement limiting availability of treble damages under antitrust statute); *Hadnot*, 344 F.3d at 478 n.14 (severing provision of arbitration agreement limiting available remedies in a Title VII case).

In *Broughton v. Cigna Healthplans of California,* 988 P.2d 67, 78-79 (1999), the California Supreme Court held that public injunction actions brought under the CLRA are non-arbitrable.  The California Supreme Court extended the *Broughton* rule in *Cruz v. Pacifware Health Systems, Inc.*, 66 P.3d 1157 (2003), to cover public injunction actions, such as those Plaintiffs seek here, brought under the FAL and UCL.  Under *Broughton* and *Cruz*, the settled rule in California is that "requests for injunctive relief designed to

---

distinct.  *Italian Colors Rest. v. Am. Express Travel Relates Servs. Co.*, 554 F.3d 300, 320 (2d Cir. 2009) ("We do not follow these cases because they all rely on findings of unconscionability under state law, while we have relied here on a vindication of statutory rights analysis, which is part of the federal substantive law of arbitrability.").

1  benefit the public present [ ] a narrow exception to the rule that the [FAA]

2  requires state courts to honor arbitration agreements." *Id.* at 1162.

3      This Court adopted the *Broughton–Cruz* rule in *Gray v. Conseco, Inc.*, Case

4  No. 00-00322 DOC (EEX), 2000 U.S. Dist. LEXIS 14821, at *8 (C.D. Cal. Sep't

5  29, 2000) (refusing to compel arbitration over injunctive aspects of UCL claim).

6  The Ninth Circuit has also approved the *Broughton–Cruz* rule:

7          California law provides that certain 'public injunctions' are
8          incompatible with arbitration (and that such a holding is
            consistent with the FAA).  Actions seeking such injunctions
9          cannot be subject to arbitration even under a valid arbitration
10         clause.

11  *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1080 (9th Cir. 2007).  This rule

12  survives *Concepción*, which focused on the availability of class procedures in

13  arbitration and never addressed the arbitrability of claims for injunctive relief or a

14  plaintiff's ability to serve as a private attorney general.  *See Concepción*, 131 S. Ct. at

15  1747-50.

16      As in *Gray*, the *Broughton–Cruz* rule applies here for two reasons.  First, an

17  arbitration of Plaintiffs' FAL, CLRA, and UCL claims for injunctive relief would

18  illuminate the undeniable "institutional shortcomings [related to] private arbitration

19  in the field of public injunctions." *Broughton,* 988 P.2d at 77.  Unless the litigants

20  expressly agree otherwise, arbitral decisions lack the effect of collateral estoppel,

21  making public injunctions reached through arbitration virtually unenforceable.  *See

22  id.* at 76.  In addition, modifying or vacating a public injunction granted by a private

23  arbitrator requires a prohibitively cumbersome process.  *Id.* at 77.  Arbitrators

24  naturally lack judges' institutional capability to make continuing reassessments of the

25  balance between public and private interests, while procedural complexities preclude

26  the ongoing supervision of a public injunction reached through arbitration.  *Id.*; *Cruz,*

27  66 P.3d at 1162.

28      Second, there is no arbitration agreement between Corinthian and the

public, which is the real party in interest where a plaintiff seeks relief as a private attorney general.  As a central component of its consumer protection legislative scheme, California has delegated law enforcement authority to the attorney general, district attorneys, city prosecutors, *and* to all private individuals who have "suffered injury in fact and [have] lost money or property" as a result of a defendants' wrongdoing.  Cal. Bus. & Prof. Code §§ 17203-04.  Under these provisions, "no compelling reason exists to treat a 'private attorney general' any differently from a 'public attorney general.'" *Bayless Inv. & Trading Co. v. Chevron U.S.A., Inc.*, No. 93 C 0704, 1994 U.S. Dist. LEXIS 12190, at *14 (D. Ariz. May 25, 1994) (citation omitted).[7]

In exercising their statutorily delegated law enforcement authority, Plaintiffs serve as *bona fide* attorneys general; in other words, they represent the public.  *See, e.g., Cruz*, 66 P.3d at 1164-65 ("injunctive relief [under the UCL] is clearly for the benefit of . . . consumers and the general public"); *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1522 (9th Cir. 1987) ("citizen plaintiffs effectively stand in the shoes of the [government]").  The public has *not* entered into an arbitration agreement with Corinthian and, thus, an obligation to arbitrate cannot be imposed on the public or its representatives. *AT&T Techs.*, 475 U.S. at 648 ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to

---

[7] Proposition 64 does not alter this conclusion.  *See Cardenas v. AmeriCredit Fin. Servs. Inc.*,No. C 09-4978 SBA, 2010 U.S. Dist. LEXIS 101669, at **25-27 (N.D. Cal. Sep't 13, 2010).  Before passage of that measure, *anyone* could bring an action as a private attorney general under the UCL.  Proposition 64 simply amended section 17200's standing requirement so that only those who "suffered injury in fact and . . . lost money or property as a result of unfair competition" could do so.  Cal. Bus. & Prof. Code § 17204; *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1097-98 (2007) (After Proposition 64, "a private person has no standing under the UCL *unless* that person can establish that the injury suffered and the loss of property or money resulted from conduct that fits within one of the categories of 'unfair competition.'") (emphasis added).  Plaintiffs satisfy this standing requirement and may thus sue in a representative capacity.

submit") (citation omitted); *Britton* v. *Co-op Banking Group,* 916 F.2d 1405, 1413 (9th Cir. 1990).

In a similar case, the Supreme Court refused to enforce an otherwise valid arbitration agreement against anti-discrimination claimants because their representatives – the public attorneys – represented the public interest.  *See E.E.O.C.* v. *Waffle House, Inc.,* 534 U.S. 279 (2002).  Even if sufficiently broad to encompass its fraudulent pre-enrollment conduct, Corinthian's narrow arbitration agreements likewise have no bearing on Plaintiffs' ability to bring a private attorney general action that seeks a court injunction on behalf of the public.  As the *Cruz* court explained, "*Waffle House* suggests the Supreme Court's agreement that a party acting *entirely* on behalf of the public . . . when he pursues a public injunction acts beyond the scope of any arbitration agreement."  *Cruz,* 66 P.3d at 1167 n.6 (emphasis in original); *cf. In re First Alliance Mortg.,* 280 B.R. 240, 245 (C.D. Cal. 2002) (defendant may not "compel a government regulatory agency to arbitrate its claims").  The public has no commitment to arbitrate with Corinthian, and the Court should decline Corinthian's invitation to turn its back to the public in the name of Corinthian's interest.

## IV.  Conclusion

For these reasons, the Court should deny Corinthian's motion.


DATED:   June 6, 2011                    Chapin Fitzgerald Sullivan & Bottini LLP

                                         By: /s/ Douglas J. Brown
                                         _____
                                         Edward D. Chapin, Esq.
                                         Francis A. Bottini, Jr., Esq.
                                         Douglas J. Brown, Esq.

                                         Attorneys for Plaintiffs