CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
   Edward D. Chapin, Esq. (SBN: 053287)
   echapin@cfsblaw.com
   Francis A. Bottini, Jr., Esq. (SBN: 175783)
   fbottini@cfsblaw.com
   Douglas J. Brown, Esq. (SBN: 248673)
   dbrown@cfsblaw.com
550 West "C" Street, Suite 2000
San Diego, California 92101
Tel:  (619) 241-4810
Fax: (619) 955-5318

Attorneys for Plaintiffs Kevin Ferguson and Sandra L. Muñiz

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Kevin Ferguson**, *on behalf of himself and all others similarly situated*,<br><br>                Plaintiff,<br><br>vs.<br><br>Corinthian Colleges, Inc.; Corinthian Colleges, Inc., d/b/a Everest College; Corinthian Colleges, Inc., d/b/a Everest University; Corinthian Colleges, Inc., d/b/a Everest Institute; Corinthian Colleges, Inc., d/b/a Everest College of Business, Technology and Health Care; Heald College, LLC; and Heald Capital, LLC,<br><br>                Defendants. | Case No.:   11-cv-0127 DOC (AJWx)<br><br>**Plaintiff Sandra L. Muñiz's *Ex Parte* Application To Strike Portion of Defendants' Reply Or For Leave To File Sur-Reply**<br><br>Date:  June 27, 2011<br>Time:  8:30 a.m.<br>Dept.:  9-D<br>Judge:  Hon. David O. Carter |

[Additional Caption on Next Page]

---

11-cv-00127 DOC (AJWx)

*Ex Parte* Application to Strike or for Leave to File Sur-Reply (*Ferguson, et al. v. Corinthian*)

| | |
|---|---|
| **Sandra L. Muñiz**, *on behalf of herself and all others similarly situated*, | ) Case No.:   11-cv-0259 DOC (AJWx) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| Corinthian Colleges, Inc.; Corinthian Colleges, Inc., d/b/a Everest College; Corinthian Colleges, Inc., d/b/a Everest University; Corinthian Colleges, Inc., d/b/a Everest Institute; Corinthian Colleges, Inc., d/b/a Everest College of Business, Technology and Health Care; Heald College, LLC; and Heald Capital, LLC, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

11-cv-00127 DOC (AJWx)

*Ex Parte* Application to Strike or for Leave to File Sur-Reply (*Ferguson, et al. v. Corinthian*)

Plaintiff Sandra L. Muñiz[1] moves to strike portions of Corinthian's reply brief in support of its motion to compel arbitration or, in the alternative, for leave to file a sur-reply.

### A. Corinthian Reserved Its "Any Dispute" Argument For Its Reply.

Corinthian's motion is founded on its contention that, when she enrolled in its schools, Plaintiff contractually agreed to submit her purported claims to binding arbitration. The scope of that contractual agreement is thus a central issue in this motion and one essential to Corinthian's contention.

Apparently recognizing this, Corinthian devoted a paragraph in its moving papers to the argument that the scope of the subject arbitration agreements covers "any dispute arising from [my] enrollment":

> **Plaintiff's purported claims fall squarely within the ambit of the arbitration agreements, which cover "any dispute arising from [my] enrollment . . . ."** Gerard Decl. at Exs. A, B, and C; Adams Decl. at Exs. A and B. Indeed, Plaintiff's central theory is that her enrollment and the contracts evidencing such enrollment were supposedly made in purported violation of California law. **Each purported claim arises from Plaintiff's enrollment in the School.** If there were any ambiguity on the point (and there is none), the Court is nevertheless bound to order arbitration absent "positive assurance" that the arbitration agreement does not cover a given dispute: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). There is no support for any assertion that the instant claims do not fall within the

---

[1] Plaintiff Kevin Ferguson joins this application. Because the precise wording and page/line numbers of Corinthian's briefing differ with respect to him, and because there are some differences in the precise wording of the arbitration agreements he signed, Plaintiff Ferguson's joins separately for the sake of clarity.

arbitration agreement's ambit – much less any "positive assurance."

*Muñiz* Mot. at 6:21-7:6 (emphasis added).  Throughout its brief, Corinthian consistently referenced this "arising from . . . enrollment" language as governing the scope of the arbitration agreements at issue.  *Muñiz* Mot. at 4:7-8 ("In violation of the Terms of Arbitration, Plaintiff filed this lawsuit alleging a **dispute arising exclusively from her enrollment** with the School.") (emphasis added); *id.* at 8:3-8 ("The question of who can arbitrate is answered in the very first sentence of Plaintiff's Agreement to Binding Arbitration and Waiver of Jury Trial [, which states] I, Sandra L. Muniz agree that **any dispute arising from my enrollment** at Heald College . . . .") (emphasis added); *see also id.* at 2:1-5; *id.* at 2:14-21; *id.* at 3:2-16.

After Plaintiffs pointed out in their opposition brief that their disputes did *not* arise from their enrollments, Corinthian submitted a reply brief in which, for the first time, and after Plaintiff no longer had the opportunity to respond, it argues that the scope of its arbitration agreements is even broader:

> In this case, the scope of the arbitration agreements is not defined solely by the phrase, "any dispute arising from [my] enrollment, as Plaintiffs' argument presumes (although that would be sufficient by itself).  The "arising from" clause appears in one clause of the arbitration provisions, but so do the clauses, "both student and the [School] irrevocably agree that any dispute between them shall be submitted to arbitration;" "Both the School and I...are selecting [] to submit any and all claims to the decision of an arbitrator;" and "any dispute arising from enrollment at [the School], no matter how described, pleaded or styled, shall be resolved by binding arbitration...."

Reply at 6:13-7:5 (*Muñiz v. Corinthian*, Case No. 11-00259, Doc. No. 27) ("*Muñiz* Reply").  Even a cursory examination of Corinthian's arbitration agreements reveals weaknesses suggesting that Corinthian reserved this argument for its reply in order to shield it from scrutiny it cannot bear.

### B. The Court Should Strike Corinthian's Revised Argument Or Grant Plaintiff Leave To File A Sur-Reply.

Corinthian could, and should, have argued for the broader language in its opening brief. "There is no reason that [Corinthian] could not have properly raised this argument" in its opening brief given its assertion that the additional clauses it now advances appear in the subject arbitration agreements. *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1083 n.1 (C.D. Cal. 2006) (Carter, J.); *cf. Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992) (reply may raise new matters contained in opposition brief if issues were reasonably unforeseen at time of opening brief).

Corinthian's opening brief baited Plaintiff with the argument that the subject arbitration agreements cover disputes "arising from . . . enrollment." It has now switched its position to include additional language Plaintiff never had the opportunity to address. Under these circumstances, it would be "patently unfair" to consider Corinthian's revised argument where doing so would deprive Plaintiff of "a proper opportunity to oppose such arguments, and would not further the interests of justice." *Id.*; *see also Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 843 n.6 (9th Cir. 2004); *United States v. Rearden*, 349 F.3d 608, 614 n.2 (9th Cir. 2003) ("We decline to consider Rearden's argument . . . because it is raised for the first time in reply."); *Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("We decline to consider new issues raised for the first time in a reply brief.").

The proper remedy is to strike the offending language from Corinthian's reply brief:

> The opposing party should not have to incur the cost and effort of additional filings – a motion for leave to file a sur-reply, and

the sur-reply itself – because the movants deliberately, or more likely inadvertently, held back part of their case.

*Wallace v. Countrywide Home Loans, Inc.*, No. 08-cv-1463, 2009 U.S. Dist. LEXIS 110140, at *19 (C.D. Cal. Nov. 23, 2009) (quoting *Gutierrez v. 78th Judicial Dist. Court*, No. 1:07-cv-1268, 2009 U.S. Dist. LEXIS 45215 (W.D. Mich. May 29, 2009)); *see also Desrosiers v. Hartford Life & Acc. Ins. Co.*, 515 F.3d 87, 91-92 (1st Cir. 2008) (recognizing potential for unfairness in allowing party to raise new arguments in its reply brief).

Alternatively, the Court could grant Plaintiff leave to file a sur-reply. *See, e.g.*, *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040-41 (9th Cir. 2003); *see also* C.D. Cal. Local R. 7-10 (prohibiting party opposing a motion from filing a response to the reply without prior written order of the Court). At a minimum, Plaintiff deserves a full opportunity to rebut Corinthian's new argument, and to do so without the constraints of an *ex parte* application. That Corinthian quoted the "any dispute between them" language from the Agreement to Binding Arbitration and Waiver of Jury Trial in the statement of facts contained in its opening brief is irrelevant where Corinthian expressly characterized that agreement as pertaining to "any dispute arising from my enrollment." *Muñiz* Mot. at 3:2-16. Moreover, only arguments "which are argued specifically and distinctly in a party's opening brief" should be considered. *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). Even where an opening brief directly raises an argument but "inadequately develop[s]" it, it is still proper to explicate such argument from the reply. *Ass'n of Irritated Residents v. C&R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006).

### C. Plaintiff Can Rebut Corinthian's Revised Argument.

The revised argument Corinthian now advances should not distract this Court from the real question here, namely whether Plaintiffs' claims concerning

Corinthian's deceptive marketing practices arose from their enrollments. As Plaintiffs explained in their opposition brief, the answer to this question is not contingent on whether enrollment was collateral to, or a "but for" cause of their claims. It rather turns on whether Plaintiffs' claims "relat[e] to the interpretation of the [enrollment agreement] itself," which they do not and could not have since they arose before Plaintiffs ever enrolled. *E.g.*, *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)); *McDonald v. Johnson & Johnson*, 776 F.2d 767, 770-71 (8th Cir. 1985).

Regardless of when and how it was presented, Plaintiff can rebut Corinthian's revised argument. In support of its revised argument, Corinthian's reply brief invokes three additional phrases appear in the subject arbitration provisions. None of them governs the scope of the parties' agreement to arbitrate.

First, the phrase "any dispute arising from enrollment at [Corinthian], no matter how described, pleaded or styled, shall be resolved by binding arbitration" is identical in scope to the "any dispute arising from [my] enrollment" language that was the subject of Plaintiffs' opposition brief. The scope of both phrases is limited, by its own language, to disputes arising from enrollment. That one phrase contains the "no matter how described, pleaded or styled" disclaimer does not broaden that scope to include disputes not arising from enrollment, but rather serves to disclaim any potential limitation on that express scope based on description, pleading, or style. As it pertains to Plaintiffs' claims, the analysis is the same.

Second, the other two phrases Corinthian invokes[2] are inapposite because they do not define the scope of the agreement containing them. These two phrases are found only in the document entitled "Agreement to Binding

---

[2] These phrases are: "both Student and the College irrevocably agree that any dispute between them shall be submitted to arbitration" and "both the School and I . . . are selecting instead to submit any and all claims to the decision of an arbitrator."

1  Arbitration and Waiver of Jury Trial" that Plaintiff and Corinthian executed at
2  the time of her last enrollment with the school.  What Corinthian does not point
3  out, however, is that before those phrases ever appear, the first sentence of that
4  document had already circumscribed the agreement's scope: "I, [student], agree
5  that **any dispute arising from my enrollment at [Corinthian]** no matter how
6  described, pleaded or styled, shall be resolved by binding arbitration . . . ."  Decl.
7  of Guy Adams ("Adams Decl.") ¶ 5, Ex. B.  The "any dispute" and "any and all
8  claims" language that Corinthian cites does not appear until later in the
9  document, under sections entitled "Terms of Arbitration" and
10 "Acknowledgement of Waiver of Jury Trial and Availability of AAA Rules,"
11 respectively.  *Id.*

12        By the language of the agreement, one would not even reach the "Terms of
13 Arbitration" or and "Acknowledgement of Waiver of Jury Trial and Availability
14 of AAA Rules" provisions without having first satisfied the threshold "any dispute
15 arising from my enrollment" qualifier.  Put another way, by the time one reads the
16 "any dispute" or "any and all claims" language, that language has been implicitly
17 limited to "any dispute [subject to this agreement]" or "any and all claims [subject
18 to this agreement]," where the agreement's scope is defined as explicitly set forth
19 in the first sentence.  There can be no ambiguity on this point, as to read the
20 contract otherwise would be to render the express qualifier of its opening sentence
21 completely nugatory.  *See*, *e.g.*, *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381
22 F.3d 131, 137 (3d Cir. 2004) (while interpreting scope of arbitration clause,
23 explaining that "we are obligated to interpret contracts in a matter that gives
24 meaning to every word"); *see also Paulson v. Dean Witter Reynolds, Inc.*, 905 F.2d
25 1251, 1254-55 (9th Cir. 1990) (noting that in interpreting arbitration agreement,
26 court must look to "the intent of the parties at the time these contracts were
27 executed").  Corinthian conceded as much in its opening brief, where it
28 characterized this agreement as an agreement "to submit 'any dispute arising from

my enrollment' at the School 'no matter how described, pleaded or styled' to binding arbitration . . . ." *Muñiz* Mot. at 3:2-6 .

Even if the agreement were ambiguous on this point, any such ambiguity would not avail Corinthian because ambiguity as to the scope of an arbitration agreement is construed against its author. Cal. Civ. Code § 1654; *see also*, *e.g.*, *Victoria*, 40 Cal. 3d at 746 (resolving ambiguity in scope of arbitration clause against drafter). Similarly, because this agreement was executed simultaneously with Plaintiff's July 22, 2009 enrollment agreement, which limits the scope of arbitration to "any dispute arising from enrollment at [Corinthian]," the need to construe these contracts as consistent with one another bars the broad interpretation Corinthian now advances. All four of the enrollment agreements that Plaintiff signed with Corinthian, in fact, limit the scope of arbitration to "any dispute arising from [my] enrollment at [Corinthian]." Declaration of Ada Gerard ¶¶ 4-6, Exs. A-C; Adams Decl. at ¶ 5, Ex. A.

**D.    Conclusion.**

For these reasons, Plaintiff requests that the Court strike Corinthian's revised argument from its reply papers or, in the alternative, grant Plaintiff leave to file a sur-reply.

DATED:  June 22, 2011                         Chapin Fitzgerald Sullivan & Bottini LLP

By: /s/ Douglas J. Brown
Edward D. Chapin, Esq.
Francis A. Bottini, Jr., Esq.
Douglas J. Brown, Esq.

Attorneys for Plaintiffs